766 A.2d 1095

DENISE L. BURNS AND MATTHEW BURNS, W/H, PLAINTIFFS–
RESPONDENTS, v. MARK L. BELAFSKY, M.D., ROBERT B. BE-
LAFSKY, M.D., BELAFSKY AND BELAFSKY, M.D., P.A., AND
IRA STARK, D.O., DEFENDANTS–APPELLANTS,SOUTH JER-
SEY IMAGING ASSOCIATES, P.A., DEFENDANT.

Argued September 11, 2000—Decided February 26, 2001.

*Robert E. Paarz* and *Thomas B. Leyhane* argued the cause for appellants (*Paarz, Master, Koernig, Crammer, O'Brien, Bishop & Horn*, attorneys for Ira Stark, D.O. and Mr. Leyhane, attorney for Mark L. Belafsky, M.D., Robert B. Belafsky, M.D. and Belafsky and Belafsky, M.D., P.A.; *Mr. Leyhane* and *Joseph L Marczyk* on the joint briefs).

*John J. Del Casale* argued the cause for respondents.

*William L. Gold* submitted a brief on behalf of amicus curiae, Association of Trial Lawyers–New Jersey (*Bendit Weinstock*, attorneys; *Mr. Gold* and *Abbott S. Brown*, on the brief).

The opinion of the Court was delivered by

PORITZ, C.J.

In this case we are once again called on to consider the Affidavit of Merit Statute enacted by the Legislature in 1995 as part of a legislative package designed to effectuate tort reform in New

Jersey. *See* Peter Verniero, Chief Counsel to the Governor, Report to the Governor on the Subject of Tort Reform (Sept. 13, 1994). That statute establishes procedures by which "plaintiffs in malpractice cases [are required] to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily [can] be identified at an early stage of litigation." *Alan J. Cornblatt, P.A. v. Barow,* 153 *N.J.* 218, 242, 708 *A.*2d 401 (1998) (quoting *In re Petition of Hall,* 147 *N.J.* 379, 391, 688 *A.*2d 81 (1997)). To make that threshold showing, when plaintiffs allege medical malpractice they must provide defendants with an affidavit of merit executed by an appropriate licensed physician. *N.J.S.A.* 2A:53A–27.

The dispute before the Court involves the timeliness of plaintiffs' affidavit. The statute requires a plaintiff to provide the affidavit of merit within sixty days of the date the defendant files his answer to the complaint, but allows a sixty-day extension for good cause. *Ibid.* Here, plaintiffs obtained a physician's report months before filing their complaint, and then failed to submit the affidavit until eighty-five and ninety-five days after each defendant's respective answer had been filed. The affidavit was thereby provided within the extension period permitted by statute, although leave of court had not been sought within the initial sixty-day window. Defendants claim that the affidavit may be submitted after the first sixty days only when the plaintiffs have made their request for an extension during the first sixty days. The statute is silent on that question.

We do not know whether plaintiffs will ultimately prevail at trial. We do know that in this case, an expert's report was obtained even before the complaint was filed. Indeed, the physician who prepared that report later executed the affidavit, asserting to the merit of plaintiffs' claims. When a statute is susceptible of an interpretation true to its purpose and that permits plaintiffs to proceed with meritorious claims, we will not add requirements not explicitly set forth that deny plaintiffs their day in court. We hold therefore that an affidavit submitted within the sixty-day

extension period should be considered timely filed so long as good cause is found by the trial court.

I

Plaintiffs, Denise L. Burns and her husband, allege medical malpractice by defendants, Drs. Mark and Robert Belafsky, Dr. Ira Stark, and South Jersey Imaging Associates, in their diagnosis, treatment, and care of Denise Burns (hereinafter Burns or plaintiff) in respect of a soft tissue mass found in the left side of plaintiff's neck. From December 1995 through January 1996, defendants performed several tests and procedures on Burns in an attempt to diagnose and remove the mass. Plaintiffs allege that, as a result of those procedures, Burns suffered paralysis of certain cranial nerves, as well as other permanent damage to her head, neck, throat and vocal cords.

After undergoing successful surgery in April 1996 to remove the mass, plaintiff submitted her medical records to a neurosurgeon, Dr. Michael Salcman. In a report dated June 6, 1997, Dr. Salcman expressed his belief that defendants had deviated from accepted standards of care in their diagnosis and treatment of Burns. Plaintiffs then filed this malpractice action on October 6, 1997.

Although Dr. Stark filed his answer on December 18, 1997 and Drs. Mark and Robert Belafsky filed their answer on December 29, 1997, plaintiffs' counsel failed to provide an affidavit of merit as required by *N.J.S.A.* 2A:53A–27 within sixty days of defendants' respective answers. Consequently, on March 4, 1998, Dr. Stark filed a motion to dismiss the complaint for failure to file an affidavit of merit. Plaintiffs filed Dr. Salcman's affidavit, incorporating his June 1997 report, on March 23, 1998, ninety-five days after Dr. Stark filed his answer and eighty-five days after Drs. Mark and Robert Belafsky filed their answer. On June 22, 1998, both doctors also filed a motion to dismiss plaintiffs' complaint for failure to file an affidavit of merit within sixty days of the filing of their answer.

The trial court granted defendants' motions, agreeing that the statute required plaintiffs to file either an affidavit of merit or a motion for an extension within sixty days of each defendant's answer and that, in any case, plaintiffs had not made a showing of good cause for an extension. The Appellate Division reversed, finding that plaintiffs had timely filed their motion within the sixty day extension period provided by the statute and that counsel's inadvertent failure to file Dr. Salcman's affidavit constituted good cause to permit the extension. *Burns v. Belafsky*, 326 *N.J.Super.* 462, 466, 472, 741 *A.*2d 649 (1999). We granted defendants' petition for certification, 164 *N.J.* 189, 752 *A.*2d 1291 (2000), and now affirm the judgment of the Appellate Division.

## II

The Affidavit of Merit Statute, *N.J.S.A.* 2A:53A–27, states:

In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

Both plaintiffs and defendants rest their respective positions in this appeal on principles of statutory construction. Plaintiffs' argue that the statute does not expressly require a plaintiff to file a motion for an extension within sixty days of a defendant's answer, and therefore permits a court to grant such an extension for good cause when the affidavit is provided before the expiration of the extension period, *i.e.*, after sixty but before 120 days from defendants' answers. In support of that position, plaintiffs contrast the Affidavit of Merit Statute with other New Jersey statutes that explicitly state when a motion for an extension must be filed. Plaintiffs also contend that permitting an extension in this case will not compromise the legislative purpose behind the stat-

ute—the prevention of meritless malpractice lawsuits—because plaintiffs had Dr. Salcman's report in their possession even before filing their lawsuit.

Defendants counter that the statute imposes a strict requirement on plaintiffs to file an affidavit within sixty days of a defendant's answer. Defendants contend that that requirement can be relaxed only if a court grants an extension for good cause within the original sixty day time period. Defendants further argue that counsel's inadvertent failure to file the affidavit does not constitute good cause to grant an extension.

## III

We agree that resolution of the timeliness issue turns on how the Affidavit of Merit Statute is construed. When dealing with questions of statutory construction, the Court first considers the plain meaning of the provision at issue. *State v. Hoffman,* 149 *N.J.* 564, 578, 695 *A.*2d 236 (1997); *State v. Szemple,* 135 *N.J.* 406, 421, 640 *A.*2d 817 (1994); *Merin v. Maglaki,* 126 *N.J.* 430, 434, 599 *A.*2d 1256 (1992). "Such language should be given its ordinary meaning, absent a legislative intent to the contrary." *Merin, supra,* 126 *N.J.* at 434–35, 599 *A.*2d 1256. When a statute is "silent or ambiguous," however, the Court must interpret the statute in light of the Legislature's intent. *Accountemps v. Birch Tree Group,* 115 *N.J.* 614, 622, 560 *A.*2d 663 (1989); *Union County Bd. of Chosen Freeholders v. Union County Park Comm'n,* 41 *N.J.* 333, 337, 196 *A.*2d 781 (1964). In order to ascertain legislative intent, the Court may look to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction. *Hoffman, supra,* 149 *N.J.* at 578, 695 *A.*2d 236; *Szemple, supra,* 135 *N.J.* at 422, 640 *A.*2d 817. "The primary task for the [C]ourt is to 'effectuate the legislative intent in light of the language used and the objects sought to be achieved.'" *Hoffman, supra,* 149 *N.J.* at 578, 695 *A.*2d 236 (quoting *Merin, supra,* 126 *N.J.* at 435, 599 *A.*2d 1256).

Defendants argue that the plain language of the statute is clear and that the Court must give effect to the provision, "the plaintiff shall [provide an affidavit of merit] within 60 days following the date of filing of [defendant's] answer," by requiring that a plaintiff demonstrate good cause within the initial sixty days. However, the Court's inquiry into the meaning of the statute does not end with analysis of that sentence alone. *G.S. v. Department of Human Servs., Div. of Youth & Family Servs.*, 157 *N.J.* 161, 172, 723 *A*.2d 612 (1999) (stating that "[t]he statute should be considered in light of other statutory provisions and the nature of the subject matter."). Rather, that sentence must be read together with the language in that same provision allowing a court to grant "no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause." Most important, the statute is silent regarding *when* a plaintiff must seek an extension. Therefore, we must determine, in the face of such legislative silence, whether a plaintiff is required to request the extension within sixty days of a defendant's answer, or whether the filing of an affidavit after sixty days but within 120 days, with good cause, is acceptable. Because the Legislature has given no explicit direction on the issue, the Court must adopt the interpretation of the affidavit of merit provision that best effectuates the legislative intent.

## IV

As noted earlier, the Legislature enacted the Affidavit of Merit Statute to reduce frivolous lawsuits by requiring plaintiffs to make a threshold showing concerning the merits of their claim. Peter Verniero, Report to the Governor on the Subject of Tort Reform, *supra.* That threshold showing was meant to strike a balance between reducing frivolous lawsuits and permitting injured plaintiffs the opportunity to recover from culpable defendants. *Id.* at 2, 14. Those competing concerns must guide our interpretation of the affidavit of merit provisions.

In *Cornblatt v. Barow, supra,* the Court had its first opportunity to construe the Affidavit of Merit Statute. 153 *N.J.* 218, 708 *A.*2d 401. There, the Court was asked to consider whether a certification filed in lieu of an affidavit met the statutory mandate. In concluding that the statute permitted a certification, the Court looked to the policy behind the requirement that a plaintiff file an affidavit, namely, ensuring the truth of the expert's statement, and determined that that policy is satisfied when there is substantial compliance with the affidavit requirement. *Id.* at 240, 708 *A.*2d 401.

In this case, the Court is guided in its interpretation of the extension provision of the statute by the legislative policy not only to dispose of meritless malpractice claims early in the litigation, but also to allow meritorious claims to move forward unhindered. In order that meritorious claims are not defeated by a strict application of the initial sixty-day filing deadline, the Legislature included the extension provision, allowing a plaintiff to file outside of the first sixty-day period when good cause is shown. Requiring plaintiffs to file a motion for an extension within the first sixty days in order to avail themselves of the extension provision simply adds a technical precondition that the Legislature did not include in the statute. We decline to do so. Imposing such a technical requirement is unwarranted, especially where the Legislature has indicated a preference for flexibility by including the extension provision and thereby allowing leeway in the filing deadline.

Our construction of the Affidavit of Merit Statute is supported by comparing it to other enactments by the New Jersey Legislature. *See City of Clifton v. Passaic County Bd. of Taxation,* 28 *N.J.* 411, 421, 147 *A.*2d 1 (1958) (noting that comparison with laws related "expressly to the same point" is useful in statutory construction); *see also G.S., supra,* 157 *N.J.* at 172, 723 *A.*2d 612 (noting that consideration of other statutory provisions is appropriate in legislative interpretation). We see, by that comparison, that when the Legislature intended the filing of a motion for an extension within a certain specified period of time, it expressly

stated the requirement in the statute. For example, *N.J.S.A.* 45:17A–23, the statute that governs charitable organizations, requires such organizations to register with the state every year. The statute provides that the Attorney General may extend the date of registration for good cause if the request for the extension is received "before the filing deadline." Likewise, *N.J.S.A.* 54A:9–9, which governs petitions to be filed with the Director of the Division of Taxation, states that "no petition under this subsection shall be filed more than 2 years after the date of mailing of a notice of disallowance, unless prior to the expiration of such 2–year period it has been extended by written agreement between the taxpayer and the director." *N.J.S.A.* 3B:8–12, which governs a surviving spouse's elective share, states "[t]hat the court may, before the time for election has expired and upon good cause shown by the surviving spouse, extend the time for election...." Yet another example is provided by *N.J.S.A.* 17:12B–176, which governs mandatory audits of the boards of state-run credit unions or savings and loans institutions. That statute requires a written report of the result of each audit to be filed with the Commissioner of the Department of Banking and Insurance "within 90 days after the commencement of such audit, except that, for good cause shown, the commissioner may, in his discretion, on application of the State association made before expiration of such 90 day period, extend for an additional period, not to exceed 30 days, the time when such a report must be submitted." And *N.J.S.A.* 54:4–2.49, which governs the filing of tax returns, provides "upon request made on or before the last date for filing any return as fixed by law, [the tax assessor] may extend the time to file such return...."

In contrast, the Affidavit of Merit Statute does not include language requiring a plaintiff to seek an extension within sixty days of a defendant's answer. Certainly, those other statutes suggest that had the Legislature intended that result, it would have included language to achieve it. *See Tice v. Cramer*, 133 *N.J.* 347, 366, 627 *A.*2d 1090 (1993) (noting that "[t]he Legislature knew how to achieve [a particular result] when it wanted to ...

and it chose not to do so here"); *Garfield Trust Company v. Director, Division of Taxation,* 102 *N.J.* 420, 432, 508 *A.*2d 1104 (1986) (stating that when Legislature has expressly provided for specific tax exemption in one instance, its failure to do so in another "suggests that [it] did not intend such an exemption"); *see also McDonnell v. Illinois,* 319 *N.J.Super.* 324, 337, 725 *A.*2d 126 (1999) (recognizing comparison with other statutes as useful in statutory construction), *aff'd,* 163 *N.J.* 298, 748 *A.*2d 1105 (2000); *G.S., supra,* 157 *N.J.* at 172, 723 *A.*2d 612 (noting that statutes are to be interpreted in light of other statutory provisions). Both the purpose of the Legislature, and the silence of the Legislature, indicate that plaintiff is not limited to seeking an extension within that initial sixty days.

Finally, on this issue, we note that it was Dr. Stark's motion to dismiss the complaint for failure to file an affidavit of merit that apparently served as a reminder to plaintiffs' lawyer that the affidavit had not yet been filed. Because we believe that the Legislature never intended to prevent meritorious lawsuits from being heard, we are by this opinion asking the Civil Practice Committee to revise the form Civil Case Information Statement (CIS) found in Appendix XII B of the Rules of Court. Plaintiffs should be required to inform the court on the CIS whether an affidavit of merit will be provided to each defendant. The CIS must be "annexed as a cover sheet to each party's first pleading," *Rule* 4:5–1(b)(1), and, therefore, should serve as timely notice to plaintiffs that they must adhere to the mandate of the Affidavit of Merit Statute. We trust that this requirement will serve to regularize the practice and that it will further the legislative purpose.

V

That plaintiffs submitted their affidavit during the statutory extension period is undisputed. They must therefore demonstrate good cause in order to comply with the Affidavit of Merit Statute. Plaintiffs had a copy of Dr. Salcman's report attesting to the merit

of their claim even before they filed their lawsuit. Their attorney has stated that he inadvertently omitted it from the original filing.

As noted by the Appellate Division in its opinion below, inadvertence of counsel may justly be deemed to constitute good cause where the delay does not prejudice the adverse party and a rational application under the circumstances present favors a determination that provides justice to the litigant. [*Martindell v.. Martindell*, 21 *N.J.* 341, 122 *A.*2d 352 (1956)]. Absent demonstrable prejudice, "it is neither necessary nor proper to visit the sins of the attorney upon his [or her] blameless client." *Jansson v. Fairleigh Dickinson Univ.*, 198 *N.J.Super.* 190, 196, 486 *A.*2d 920 (App.Div.1985); *see also Parker v. Marcus*, 281 *N.J.Super.* 589, 594, 658 *A.*2d 1326 (App.Div.1995).

[*Burns, supra*, 326 *N.J.Super.* at 471, 741 *A.*2d 649.]

We agree with the Appellate Division. In these cases defendants cannot claim "demonstrable prejudice" because of delay: it is simply too early in the litigation for that claim to be credible. When, as here, a plaintiff has a physician's report and when, as here, plaintiff's lawyer inadvertently fails to file the affidavit of merit until the statutory extension period, we find that good cause has been demonstrated. We do not believe that the Legislature intended to preclude meritorious lawsuits in these circumstances and would not raise the bar for a finding of good cause.

## VI

The trial court never ruled on whether Dr. Salcman, a neurosurgeon, is qualified to evaluate the care provided by a radiologist. The Appellate Division, however, invoked its original jurisdiction "[i]n order to complete [its] review of the matter," and found that "Dr. Salcman has established his qualifications" as plaintiff's affiant. *Id.* at 472–73, 741 *A.*2d 649. Judge Rodriguez, concurring, would have referred that issue to the trial court for determination. *Id.* at 473, 741 A.2d 649. Defendants urge this Court to accept the concurring judge's disposition and to remand the matter of Dr. Salcman's qualifications for fact-finding.

*Rule* 2:10–5 permits the Appellate Division to exercise its original jurisdiction "as is necessary to the complete determination

of any matter on review." In this case, if Dr. Salcman is not qualified to provide an affidavit of merit then a question is raised whether plaintiffs have filed a compliant affidavit within the period permitted by statute. We approve the Appellate Division's exercise of jurisdiction to dispose of that issue both for the sake of completeness and because the record provides ample basis for disposition without further factfinding. *See Bressman v. Gash,* 131 *N.J.* 517, 528–29, 621 *A.*2d 476 (1993) (exercising original jurisdiction to "conclude the matter"); *see also Pector v. Meltzer,* 298 *N.J.Super.* 414, 418–19, 689 *A.*2d 814 (App.Div.1997) (exercising original jurisdiction to "complete the determination of the matter").

The Affidavit of Merit Statute states that the

> person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years.

[*N.J.S.A.* 2A:53A–27.]

■ Defendants urge this Court to reverse the Appellate Division and find that Dr. Salcman is not qualified to evaluate a radiologist because he "is not board certified in radiology or otolaryngology and there is no evidence that he devotes a substantial portion of his practice to radiology." However, an affidavit of merit need not be executed by an expert with the same qualifications or certifications as the defending physician; that the expert is qualified to supply the required basis for the medical malpractice complaint is sufficient. *See Wacht v. Farooqui,* 312 *N.J.Super.* 184, 188, 711 *A.*2d 405 (App.Div.1998) (holding that merely because defendant in medical malpractice action was board certified diagnostic radiologist did not mean that similarly qualified expert had to execute affidavit of merit against him; "doctor in one field would be qualified to render an opinion as to the performance of a doctor in another with respect to their common areas of practice").

Further, the statute provides that an affiant who devoted at least five years of his practice "substantially to the ... specialty involved in the action" has the "particular expertise" required to execute the affidavit. As the Appellate Division stated in *Wacht v. Farooqui:*

> The Legislature clearly recognized, ... that there are overlaps in practice between and among the various medical professions and specialties. Thus, a doctor in one field would be qualified to render an opinion as to the performance of a doctor in another with respect to their common areas of practice.
>
> [312 *N.J.Super.* at 187–88, 711 *A.*2d 405 (citing *Rosenberg by Rosenberg v. Cahill,* 99 *N.J.* 318, 331–34, 492 *A.*2d 371 (1985); *Sanzari v. Rosenfeld,* 34 *N.J.* 128, 136, 167 *A.*2d 625 (1961)).]

Dr. Salcman meets the qualifications enumerated in *N.J.S.A.* 2A:53A–27 in that he is licensed in this state and has particular expertise in the general area involved in the action. As the Appellate Division observed "[i]t seems unlikely that a neurosurgeon would not be qualified to discuss various radiological diagnosis techniques, given the need [in his practice] to locate the area and determine the type of surgical intervention needed." *Burns, supra,* 326 *N.J.Super.* at 473, 741 *A.*2d 649. Indeed, "at least three papers authored by [Dr. Salcman] dealing with CT, MRI and radiological diagnosis techniques," *ibid.,* are listed in his Curriculum Vitae, along with 194 other publications spanning a period of twenty-seven years, many of which are in related fields. We find, as did the Appellate Division, that Dr. Salcman is amply qualified to execute the affidavit of merit filed on behalf of plaintiffs.

## VI

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, LaVECCHIA and ZAZZALI—6.

*Opposed*—None.