NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3665-19

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

COUNTY OF OCEAN,

     Defendant-Respondent.

APPROVED FOR PUBLICATION

November 4, 2021

APPELLATE DIVISION

Argued October 14, 2021 — Decided November 4, 2021

Before Judges Haas,[1] Mawla, and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0527-20.

Brett J. Haroldson, Deputy Attorney General, argued the cause for appellant (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Brett J. Haroldson, on the briefs).

Mathew B. Thompson argued the cause for respondent (Berry, Sahradnik, Kotzas & Benson, attorneys; Mathew B. Thompson, on the brief).

---

[1] Judge Haas did not participate in oral argument.  He joins the opinion with counsel's consent for the purpose of disposition.  See R. 2:13-2(b).

The opinion of the court was delivered by

MAWLA, J.A.D.

Plaintiff State of New Jersey appeals from an April 17, 2020 order dismissing its complaint seeking declaratory judgment against defendant County of Ocean. We affirm.

At the outset, we note the statutory provisions in dispute. Under the New Jersey Tort Claims Act (TCA),[2] specifically N.J.S.A. 59:10A-5, "[t]he Attorney General may provide for a defense pursuant to this act by an attorney from his own staff or by employing other counsel for this purpose or by asserting the State's right under any appropriate insurance policy which requires the insurer to provide the defense." Per N.J.S.A. 40A:10-3, counties must maintain insurance:

> Every local unit . . . shall provide insurance coverage under this article for the operators of all motor vehicles, equipment and apparatus owned by or under its control, or owned by or under the control of any of its departments, boards, agencies or commissions, against liability for damages to property, in any one accident, in an amount of not less than $5,000[], and against liability for injuries or death of one person, in any one accident, in an amount of not less than $50,000[], and against liability for injuries or death . . . in any one accident, in an amount of not less than $100,000[].

---

[2] N.J.S.A. 59:1-1 to 12-3.

A-3665-19

The facts are undisputed. In May 2016, an Ocean County Prosecutor's Office (OCPO) detective operating a County vehicle rear-ended a van carrying passengers, including Keith McQuade-Sabat. McQuade-Sabat was allegedly injured. At the time of the accident, the detective was acting in her capacity as part of the OCPO homicide squad. McQuade-Sabat sued the detective, the OCPO, and the County, among others, for negligence.

The County answered for itself, the OCPO, and the detective. Its answers to interrogatories inquiring about insurance coverage stated: "The County . . . is self-insured for the first $250,000[] and an excess policy covers additional exposure."

On May 18, 2018, County counsel wrote to the Attorney General requesting the State defend and indemnify the OCPO and the detective.[3] A Deputy Attorney General (DAG) responded the same day: "The [Attorney General] will take over defense and indemnification of [the] OCPO and [the detective] in this matter. A DAG will be assigned and contact you to arrange for transfer of the file." In June 2018, a DAG filed a substitution of attorney on behalf of the OCPO and the detective.

On December 5, 2019, a DAG advised County counsel the State's obligations to defend and indemnify the OCPO and the detective are secondary

---

[3] All claims against the County were later dismissed on summary judgment.

to defendant's mandatory insurance obligation pursuant to N.J.S.A. 40A:10-3. In support of that position, the DAG relied upon an unpublished opinion of this court, Whittaker v. Rua, No. A-0735-13 (App. Div. June 20, 2014) (slip op. at 18), which stated:

> If the Attorney General is obliged to defend, then the State is obliged to indemnify. The duty to indemnify follows, whether the defense is provided directly by the State, or through outside counsel, or insurer's counsel. Nonetheless, reading N.J.S.A. 59:10-1 in harmony with N.J.S.A. 40A:10-3 and -4, we conclude that the State's duty to indemnify must be secondary to that of mandated insurance coverage.
>
> [(citations omitted).]

County counsel did not respond.

On January 30, 2020, the DAG called County counsel reiterating "current case law indicates that [defendant's] mandatory insurance coverage could be utilized for any portion of a judgment or settlement . . . ." The DAG sent a follow-up letter on February 8, 2020, reiterating that "pursuant to N.J.S.A. 40A:10-3, which mandates that the County obtain insurance or self-insure vehicles it owns, including the vehicle involved in the underlying accident . . . the County owes coverage on a primary basis for the incident underlying this case . . . ." County counsel did not respond to the letter.

The State filed a verified complaint and an order to show cause for a declaratory judgment. It argued pursuant to N.J.S.A. 59:10A-5, it was entitled

4

A-3665-19

to use "any appropriate insurance policy" to defend and indemnify the County. It claimed because the County was required to have insurance pursuant to N.J.S.A. 40A:10-3, the County's self-insurance and excess insurance policies were primarily responsible for any judgment or settlement in the underlying tort suit.

Following oral argument, the motion judge issued a written order denying the application and dismissing the State's complaint, finding:

> N.J.S.A. 59:10A-5 "Methods of providing defense" does not address "indemnity." The terms have separate distinct plain meanings. A duty to defend does not necessarily give rise to a duty to indemnify . . . . There is no insurance policy. The County . . . is self-insured for the first $250,000. There is no insurer required to provide the defense. An excess insurer has no duty to defend. There is no linkage between N.J.S.A. 40A:10-3 and N.J.S.A. 59:10A-5.

The State raises the following points on appeal:

> POINT I: THE TRIAL COURT'S JUDGMENT SHOULD BE REVERSED BECAUSE IT INCORRECTLY FOUND THAT THERE WAS NO POLICY OF INSURANCE FOR THE ATTORNEY GENERAL TO UTILIZE, DESPITE A STATUTE MANDATING SUCH A POLICY.
>
> POINT II: THE TRIAL COURT IMPROPERLY DIVORCED THE CONCEPTS OF DEFENSE AND INDEMNIFICATION—AN INTERPRETATION BELIED BY BINDING PRECEDENT AND COMMON SENSE.

A-3665-19

POINT III: THE TWO STATUTES, AND WRIGHT[4], CAN AND SHOULD BE HARMONIZED, WHICH THE TRIAL COURT DID NOT DO.

The central issue concerns statutory interpretation, a question of law. State v. S.B., 230 N.J. 62, 67 (2017). Our review is de novo. Ibid.

In Wright, our Supreme Court explained the fundamental principles governing the State's duty to defend and indemnify state employees pursuant to the TCA. In that case, the plaintiff sued Somerset County Prosecutor's Office (SCPO) employees, alleging various torts incident to his arrest and prosecution. 169 N.J. at 430-31. Somerset County demanded the State provide a defense and indemnification. Id. at 432. The Court held in favor of the county with one member dissenting. Id. at 457.

The majority rejected the dissent's assertion the State did not have to defend and indemnify county employees because a separate statute required the county to bear "[a]ll necessary expenses incurred by the prosecutor for each county in the detection, arrest, indictment and conviction of offenders against the laws . . . ." Id. at 443 (quoting N.J.S.A. 2A:158-7) (alteration in original). The Court concluded the issue of defense and indemnification was therefore not controlled by Title 2A, because

---

[4] Wright v. State, 169 N.J. 422 (2001).

the "TCA was [] intended to supersede the patchwork of statutory provisions providing for the defense and indemnification of state employees." Chasin v. Montclair State Univ., 159 N.J. 418, 425 (1999). . . . [T]he Legislature would not have enacted such detailed provisions dealing with the State's liability for defense and indemnification in the TCA if the provisions of N.J.S.A. 2A:158-7 resolved the issue. Thus, we rely exclusively on the provisions of the TCA, as well as related case law, to resolve the defense and indemnification issue because "the TCA, . . . provides the unified scheme under which the Attorney General's duty to defend and indemnify employees must be evaluated." Ibid.

[Id. at 443-44 (second alteration in original).]

Regarding the State's duty to defend and indemnify, the Court ruled:

"N.J.S.A. 59:10-1 requires the State to indemnify employees for whom a defense is provided." Chasin, 159 N.J. at 426. The purpose of furnishing a State employee with a legal defense "is to avoid the entry of a damages award in the first instance." Michaels [v. State of N.J., 968 F. Supp. 230, 234 n.4 (D.N.J. 1997)]. "Thus, . . . at least for purposes of the State's obligation under the [TCA], the concepts of indemnification and the provision of defense costs are 'wedded together.'" Id. at 236 n.8.

[Id. at 444-45.]

The Court held that when the conduct of county prosecutors and their subordinates qualifies them as State employees under the TCA, "the State should be made 'to respond in damages' based 'on general principles of [r]espondeat superior.'" Id. at 452 (alteration in original) (quoting McAndrew

7

v. Mularchuk, 33 N.J. 172, 193 (1960)). "[T]he State should be obligated to pay the county prosecutors and their subordinates' defense costs and to indemnify them if their alleged misconduct involved the State function of investigation and enforcement of the criminal laws." Id. at 455 (citation omitted).

The Court concluded:

> To vindicate the legislative purpose of providing defense and indemnification to public employees performing an essential State function, we interpret the defense and indemnification provisions of the TCA to apply to county prosecutorial employees sued on the basis of actions taken in the discharge of their law enforcement duties. That interpretation will resolve the anomaly acknowledged in [Michaels[5]] "whereby the State could be held vicariously liable for the actions of an individual . . . whom the county must indemnify," by making the state fully liable for such defense and indemnification costs and providing the State full and complete control of the defense.
>
> [Id. at 456 (emphasis added).]

The State argues Wright did not address N.J.S.A. 59:10A-5, which permits the State to fulfill its duty to indemnify the OCPO and the detective

---

[5] Michaels, 968 F. Supp. at 237-38, held the TCA did not include prosecutorial defendants as State employees and therefore "the State was not required to defend and indemnify Somerset County and the SCPO employees." Wright, 169 N.J. at 433.

using the insurance the OCPO is required to maintain pursuant to N.J.S.A. 40A:10-3. We disagree.

"Where the plain language of a statute is clear, we enforce the statute as written." Correa v. Grossi, 458 N.J. Super. 571, 579 (App. Div. 2019) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "However, our basic rules of statutory interpretation recognize that not every statute is clear, and in case of ambiguity, our guiding light is the Legislature's intent." Ibid. "In order to ascertain legislative intent, the Court may look to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction." Burns v. Belafsky, 166 N.J. 466, 473 (2001) (citing State v. Hoffman, 149 N.J. 564, 578 (1997)).

"'Punctuation is part of an act and may be considered in its interpretation.'" In re Est. of Fisher, 443 N.J. Super. 180, 192 (App. Div. 2015) (quoting Com. Bancorp, Inc. v. InterArch, Inc., 417 N.J. Super. 329, 336 (App. Div. 2010)). "[T]he word 'or' in a statute is to be considered a disjunctive particle indicating an alternative." Ibid. (alteration in original) (quoting State v. Kress, 105 N.J. Super. 514, 520 (Law Div. 1969)).

Applying these principles, we do not read N.J.S.A. 59:10A-5 as addressing indemnification. The plain language of N.J.S.A. 59:10A-5 reveals its purpose is to memorialize the Attorney General's ability to designate who

shall undertake a defense. The statute permits the Attorney General to designate "an attorney from his own staff or by employing other counsel for this purpose or by asserting the State's right under any appropriate insurance policy which requires the insurer to provide the defense." N.J.S.A. 59:10A-5.

It is clear N.J.S.A. 59:10A-5 provides a list of alternatives as to who the Attorney General may designate to take up the defense in a case. The statute's plain language does not mean that the ability to designate also permits the State to designate who shall bear the costs of indemnity. Pursuant to Wright, if the State is obligated to defend, regardless of who the State then designates to defend, the State bears the corresponding cost of indemnification. 169 N.J. at 444-45.

Extrinsic evidence confirms the statute's aim is to provide the Attorney General the ability to control the litigation. At the time of the TCA's enactment, a task force convened by the Attorney General stated:

> The above authority [N.J.S.A. 59:10A-5 and 6] is provided primarily for the purpose of satisfying the needs for representation of State employees resulting from the passage of the [TCA]. Although this authority is undoubtedly possessed by the Attorney General under his existing powers, this amendment is intended to explicitly establish that authority and the circumstances under which it will be exercised.
>
> In addition this amendment makes clear that the Attorney General shall have exclusive control of the litigation and State employees must cooperate with

10

him fully or lose their right to indemnification provided in chapter 10 of the [TCA].

[Off. of the Att'y Gen, Report of the Attorney General's Task Force on Sovereign Immunity 249 Cmt. (1972).]

For these reasons, the State was obligated to defend and indemnify the OCPO and its detective without the ability to resort to the County's insurance. In our view, this interpretation of N.J.S.A. 59:10A-5 "vindicate[s] the legislative purpose of providing defense and indemnification to public employees performing an essential State function[.]" Wright, 169 N.J. at 456.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3665-19