**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0603-24

LAXAVIER HOOD, individually,
and on behalf of THE ESTATE
OF ZELA SCOTT,

    Plaintiff-Appellant,

v.

KINDRED HOSPITAL NEW
JERSEY WAYNE,

    Defendant-Respondent.

_____

Submitted October 14, 2025 – Decided November 6, 2025

Before Judges Walcott-Henderson and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-1873-22.

Epstein Ostrove, LLC, attorneys for appellant (Lance D. Brown, of counsel and the briefs; Robert C. Sanfilippo, on the briefs).

Farkas and Donohue, LLC, attorneys for respondent (David C. Donohue, of counsel; Robert G. Veech, III, on the brief).

PER CURIAM

In this medical malpractice action, plaintiff LaXavier Hood, individually and on behalf of the Estate of Zela Scott ("decedent"), appeals from two orders of the Law Division: an August 26, 2024 order granting Kindred Hospital New Jersey Wayne's ("Kindred") motion for reconsideration and dismissing plaintiff's complaint with prejudice for failure to provide a compliant Affidavit of Merit ("AOM") under N.J.S.A. 2A:53A-27 to -29; and an October 11, 2024 order denying plaintiff's motion for reconsideration of that dismissal. The central question is whether plaintiff's AOM was sufficient under the statute. Plaintiff argues the court erred in dismissing her complaint based on a misreading and misapplication of Hargett v. Hamilton Park OPCO, LLC., 477 N.J. Super. 390 (App. Div. 2023). We agree and accordingly reverse.

I.

From February 6 through August 4, 2020, decedent received various treatments while a patient at Kindred. Her care was mostly provided by licensed nursing staff and non-licensed personnel, such as Certified Nursing Assistants ("CNAs"). Despite these treatments, her condition deteriorated and she developed severe multiple-stage-4 decubitus ulcers. Her family was notified about the changes in her medical condition, and she was admitted to the

2

emergency room in critical condition and transferred to St. Joseph's Hospital. Three days later, on August 7, 2020, she died. The death certificate listed the cause of death as acute hypoxic respiratory failure, septic shock, multidrug-resistant pneumonia, and bacteremia, with a contributing medical history of metastatic uterine cancer.

Plaintiff, decedent's daughter, filed a complaint against Kindred and John Does 1 through 100, asserting claims of negligence, gross negligence, wrongful death, punitive damages, and vicarious liability related to the care provided by Kindred, including nurses and CNAs. Plaintiff alleged that defendant, both directly and through its nursing staff and caregivers, failed to provide adequate and consistent care, prevent the development and progression of pressure injuries, and implement proper safety measures. Additionally, the complaint further claimed that insufficient charting and documentation made it difficult to identify which individuals provided or failed to provide appropriate care. Defendant cross-claimed, asserting, inter alia, several affirmative defenses and demanded the production of a compliant AOM within sixty-days.

Plaintiff submitted an AOM prepared by registered nurse Kenneth McCawley on November 23, 2022. Defendant objected, arguing the AOM was

A-0603-24

noncompliant because it did not identify specific persons who deviated from the standard of care and was therefore a "blanket AOM."

Plaintiff submitted a second AOM from Nurse McCawley, stating that both Kindred and "its nursing staff" deviated from accepted standards in the care of decedent. Defendant again moved for dismissal of plaintiff's complaint for failure to provide a compliant AOM, arguing:

> [w]ithout question, if a "nurse" was named as a defendant, then an AOM identifying that specific "nurse" would have to be served. Where the claim is asserted against an employer entity for alleged vicarious liability associated with alleged negligent nursing care, then the requirement cannot be any less. Kindred is entitled to an AOM that informs it of the nature of the claims and identifies the employees that are asserted to have been negligent. It would be improper to construe the AOM otherwise.

On April 27, 2023, the court denied defendant's motion. The court found plaintiff had substantially complied with the AOM statute and noted the challenges of identifying each caregiver in these types of cases and the equities involved given the cumulative nature of the care at issue. The court discussed the requirements needed to be compliant with the AOM statute,[1] and found the

---

[1] To show substantial compliance, a plaintiff must demonstrate: (1) no prejudice to the defendant, (2) steps taken toward compliance, (3) general adherence to the statute's purpose, (4) reasonable notice of the claim, and (5) a

revised AOM "clearly opines that there exists a reasonable probability that the defendant in question . . . deviated in the care and treatment of [decedent] from acceptable nursing practice."

On December 11, 2023, we issued an opinion in Hargett, 477 N.J. Super. at 390. We held that a blanket AOM that fails to specify particular individuals or their actions when multiple potentially negligent parties exist is insufficient to satisfy N.J.S.A. 2A:53A-27. Id. at 395-98. Approximately one year after the court entered its original April 27, 2023 order and four months following this court's decision in Hargett, defendant moved for reconsideration of the court's denial of its prior motion to dismiss plaintiff's complaint, arguing that under Hargett, plaintiff's AOM proved insufficient.

The court granted defendant's motion for reconsideration, over plaintiff's objection, and dismissed plaintiff's complaint with prejudice. The court reasoned that plaintiff's complaint:

> does not address the issue of administrative negligence, which is now the very essence of this case. . . . As in Hargett, it now clearly appears to the [c]ourt that plaintiffs, in reality are not alleging a nursing malpractice action but rather an administrative

---

reasonable explanation for noncompliance. See Galik v. Clara Maass Medical Center, 167 N.J. 341, 353-54 (2001); see also Ferreira v. Rancocas Orthopaedic Associates, 178 N.J. 144, 146-47 (2003).

5

> negligence case under the guise of a vicarious liability claim.

The court concluded "specifically as it relates to this issue of the entire nursing staff as a whole, the [c]ourt has no choice but to grant the relief now requested."

Following the court's oral decision, plaintiff sought leave to file a motion for reconsideration, stating "there is a decision that came down very recently by the Supreme Court . . . in the interim between the time that we argued it, and the time that this was decided, I think this might be appropriate," referring to Moschella v. Hackensack Meridian Jersey Shore Univ. Med. Ctr., 258 N.J. 110, 113 (2024).[2]

In Moschella, our Supreme Court held N.J.S.A. 2A:53A-27 does not require an affiant to state that he or she reviewed the medical records, nor does it require the plaintiff to name a specific defendant in the affidavit. Id. at 114-15. The Court emphasized that referencing unnamed "John or Jane Doe" employees is sufficient when individual actors cannot be identified, and reversed the dismissal of the plaintiff's complaint. Id. at 128. The Moschella Court held

---

[2] The court acknowledged that plaintiff was seeking reconsideration of a motion for reconsideration and allowed plaintiff the opportunity to address the issue in light of Moschella.

6

that such substantial compliance fulfills the statute's goal to screen out frivolous cases while preserving meritorious claims. Id. at 121.

On October 11, 2024, in its final order, the court nevertheless denied plaintiff's motion for reconsideration, finding that Moschella did not establish any new obligation or requirement but merely reiterated the prohibition against blanket AOMs.

This appeal followed.

II.

"Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo." Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 108 (2019)). In considering a Rule 4:6-2(e) motion, "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiffs the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos, 237 N.J. at 108). The test for determining the adequacy of a pleading is "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).

7

The submission of an appropriate AOM is an element of the claim. Meehan v. Antonellis, 226 N.J. 216, 228 (2016). Therefore, failure to provide an AOM is "deemed a failure to state a cause of action." N.J.S.A. 2A:53A-29. "The failure to deliver a proper affidavit within the statutory time period requires a dismissal of the complaint with prejudice." Ferreira, 178 N.J. at 146 (citing Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 242 (1998)).

This court reviews a trial judge's decision on whether to grant or deny a motion for rehearing or reconsideration under Rule 4:49-2, under an abuse of discretion standard. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (citing Kornbleuth v. Westover, 241 N.J. 289, 301 (2020)). An abuse of discretion occurs when a court's decision lacks a logical justification, strays from established rules or standards for no clear reason, or is based on an improper ground. Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002).

Before us, plaintiff's central argument is that the motion court erred by mistakenly applying Hargett to the facts of her case and interpreting Hargett as a "bright-line" rule that if an AOM refers to a licensed healthcare facility's nursing staff, that automatically equates to an administrative negligence claim against the facility, even if not pled. Specifically, plaintiff maintains that her complaint "does not fall within the scope of Hargett" for several reasons: (1)

Hargett was decided after the court had already determined Nurse McCawley's March 2023 AOM was compliant with the AOM statute; (2) nothing in Hargett suggests defendant could wait until a year after the court had deemed an AOM sufficient to refile its motion challenging an earlier determination; and (3) Hargett is inapplicable and factually distinguishable from the within matter as plaintiff's claims are not grounded in administrative negligence.[3]  Additionally, plaintiff contends defendant should be equitably estopped from seeking dismissal because it engaged in discovery and litigation for over a year after the court initially deemed the AOM sufficient, inducing reasonable reliance on that ruling.  Plaintiff insists dismissal was improper as to claims against the CNAs, because the AOM statute does not apply to vicarious liability claims based on their alleged negligence, and those claims should have remained pending at least through expert discovery.

Plaintiff further argues her AOM complied with N.J.S.A. 2A:53A-27 because, as in Moschella, the statute does not require the AOM to name specific individuals or employees where the complaint only references a single facility

---

[3]  Plaintiff argues the allegations in Hargett reference "budgeting, marketing, [and] human resource management" as well as a failure to "provide resources necessary, including staff, to meet the needs of their residents."

and John Doe agents, and because the defect identified in <u>Hargett</u> is absent from these facts in the instant case. We agree.

N.J.S.A. 2A:53A-27, the AOM statute, requires a plaintiff in a professional negligence action to serve each defendant with an affidavit from "an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. 2A:53A-27 expressly applies to only those professionals listed as "licensed persons" under 2A:53A-26. CNAs and other non-licensed staff are not included among the sixteen listed professions.[4]

The dual purpose of the AOM statute is "to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." <u>Ferreira</u>, 178 N.J. at 150

---

[4] A "licensed person" means any person who is licensed as: an accountant; an architect; an attorney admitted to practice law in the State; a dentist; an engineer; a physician in the practice of medicine or surgery; a podiatrist; a chiropractor; a registered professional nurse; a health care facility; a physical therapist; a land surveyor; a registered pharmacist; a veterinarian; an insurance producer; a certified midwife, a certified professional midwife, or a certified nurse midwife; and a licensed site remediation professional. N.J.S.A. 2A:53A-26.

(quoting Hubbard v. Reed, 168 N.J. 387, 395 (2001)). To achieve that balance, plaintiffs bringing negligence suits against designated professionals are required to produce an AOM from an expert attesting to the merits of the claim. The court has "construed the statute to require dismissal with prejudice for noncompliance." Moschella, 258 N.J. 110, 112-14 (quoting A.T. v. Cohen, 231 N.J. 337, 346 (2017)).

"The [AOM statute] is the exclusive authority governing the document to be filed." Cornblatt, 153 N.J. at 238. Because the statute's aim is to identify and eliminate unmeritorious claims against licensed professionals and "to permit meritorious claims to proceed efficiently through the litigation process," our courts recognize the doctrines of substantial compliance and extraordinary circumstances, which can "temper the draconian results of an inflexible application of the statute when an AOM is insufficient." Meehan, 226 N.J. at 229 (quoting Ferreira, 178 N.J. at 151).

We have held that N.J.S.A. 2A:53A-27 does not require naming of every defendant. Medeiros v. O'Donnell & Naccarato, Inc., 347 N.J. Super. 536, 541 (App. Div. 2002). In Medeiros, the plaintiff filed an AOM that did not name any individual engineers responsible for a construction site accident, but rather asserted deviation from the standard of care by "defendant architects and

engineers." Id. at 539. We held that the AOM was compliant since the statute does not require naming individuals, and courts will not add such requirements, and only one engineering firm was involved, eliminating the potential for ambiguity. Id. at 541-42.

Moreover, our Supreme Court's recent holding in Moschella confirms the AOM statute was not intended to be construed to require every individual defendant alleged to have been negligent to be named. See 258 N.J. at 110. In that case, the plaintiff sued the medical center for wrongful death and provided an AOM that did not name every provider but identified them by description and referenced John/Jane Doe employees. Id. at 116. There, the defendants argued in part, the AOM was insufficient because it failed to name individual defendants in the action and did not state that the doctor who submitted the AOM was a "similarly licensed physician." The motion court agreed and dismissed plaintiff's complaint. The court reasoned that although the AOM was provided by a similarly credentialed expert, it was insufficient because the AOM did not indicate that any named defendant's care fell outside acceptable professional or occupational standards through plaintiff's use of "John and Jane Doe" designations in the complaint. We affirmed the court's dismissal of plaintiff's

12

complaint, agreeing that the AOM was insufficient because it did not allege negligence against a named defendant. However, our Supreme Court reversed.

The Court held that the AOM statute does not mandate that defendants be identified by name where the complaint references "John Doe" employees. Id. at 113. The Court emphasized that the statute itself provides the "exclusive authority" for AOM content and cautioned against imposing extra-statutory technical demands that would deny plaintiffs their day in court. Id. at 120-21. The Court found the statute was satisfied when the affidavit gives reasonable notice of the class of professionals whose conduct is challenged, particularly when only one facility and its employees are involved. Id. at 127-28; see also Medeiros, 347 N.J. Super. at 541-42. The Court further underscored the importance of substantial compliance and warned that rigid application of the statute can produce "draconian" results inconsistent with its remedial purpose. Id. at 122 (citing Meehan, 226 N.J. at 229).

By contrast, in Hargett, which predated Moschella, we affirmed the dismissal of plaintiff's complaint where the AOM was fatally ambiguous for two key fact-intensive reasons: (1) the plaintiff's AOM referred very generally to "the entire . . . nursing staff" of two different facilities over an "extended period," and did not distinguish between the workforces; and (2) the underlying

complaint was primarily predicated on administrative negligence rather than classic vicarious liability rooted in the alleged professional negligence of particular nurses. Hargett, 477 N.J. Super. at 398-99. These outcome determinative facts are not before us.

Here, plaintiff filed her complaint against Kindred, a single entity, alleging acts and omissions of its staff, including both nurses and non-licensed personnel, over the course of a defined admission period. Plaintiff's AOM references "Kindred and its nursing staff," asserting the decedent's care fell below acceptable standards. Unlike in Hargett, plaintiff's complaint and second AOM submitted did not reference employees of numerous facilities, nor was the complaint predicated on administrative negligence. Rather, plaintiff's complaint was rooted in professional negligence and vicarious liability for failure to prevent and treat her late-mother's ulcers among other alleged failures and deficiencies in her nursing care. In this regard, plaintiff's complaint is factually distinguishable from Hargett and more closely resembles Medeiros, where the court accepted an AOM that referenced a group of professionals within a single defendant entity without requiring identification of each individual defendant by name. See Medeiros, 347 N.J. Super. at 542.

14

We therefore reject defendant's contention <u>Hargett</u> established a brightline rule or required every nurse who provided care to decedent to be identified by name for the AOM to be deemed compliant. We remain unpersuaded that the AOM statute or case law compels such a result. Simply put, this argument is unsupported by the statute and our Supreme Court's holding in <u>Moschella</u>. Further, <u>Moschella</u> cautioned against an overbroad naming of each individual nurse, as that would run contrary to the remedial purpose of the statute. <u>See</u> 258 N.J. at 122.

Based on our de novo review, we conclude plaintiff's AOM is sufficient and the complaint should not have been dismissed. Because we conclude the court erred in dismissing plaintiff's complaint, we need not address the denial of plaintiff's subsequent motion for reconsideration. Accordingly, we vacate the dismissal, reinstate plaintiff's complaint, and remand to the court for further proceedings. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

15

A-0603-24