SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Candace A. Moschella v. Hackensack Meridian Jersey Shore University Medical Center** **(A-7-23) (088312)**

**Argued May 2, 2024 -- Decided July 11, 2024**

**SOLOMON, J., writing for a unanimous Court.**

Pursuant to N.J.S.A. 2A:53A-27, a plaintiff in an action against a licensed professional must produce an affidavit from an expert attesting to the merits of the claim. Issues regarding the expert affidavit -- the Affidavit of Merit (AOM) -- are to be resolved at an accelerated case management conference conducted by the trial court in accordance with Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 154-55 (2003), otherwise known as a Ferreira conference. In this appeal, the Court considers whether the trial court properly found, without holding a Ferreira conference, that the AOM submitted by plaintiff Candace Moschella was insufficient.

On July 20, 2018, plaintiff's daughter, Alexandrianna Lowe, who suffered from an opioid addiction, was admitted to Hackensack Meridian Jersey Shore University Medical Center (JSUMC) for complications associated with Type 1 diabetes. Two days later, Lowe was found unresponsive. Hospital staff administered anti-opioid medication but failed to check Lowe's blood sugar levels. An autopsy revealed Lowe had no illicit drugs in her system at the time of her death.

Plaintiff filed a complaint against JSUMC, Michael Carson, M.D., and John and Jane Does 1 through 100. At the time of the complaint's filing, plaintiff had not yet been appointed administratrix ad prosequendum of her daughter's estate, so she did not have access to Lowe's medical records.

Defendants moved to dismiss Dr. Carson because he did not participate in any of the events that led to Lowe's death. The motion included an affidavit identifying Dr. Vikas Singh as the attending physician at the time of Lowe's death and two pages of Lowe's medical records. The court granted defendants' motion.

Plaintiff submitted an AOM prepared by Dr. Joseph Fallon that stated Fallon was "Board Certified in Internal Medicine, as was . . . Dr. Michael P. Carson and at least one of the John and Jane Doe [d]efendants sued therein (now known to be Dr. Vikas Singh, the physician in charge of the efforts to resuscitate [Lowe])."

1

Defendants argued that the Fallon AOM was insufficient because it failed to name the surviving defendants in the action; did not state that Dr. Fallon was a "similarly licensed physician" as contemplated by the AOM statute; and failed to state that Dr. Fallon reviewed Lowe's medical records.

Without a Ferriera conference, the trial court dismissed plaintiff's complaint with prejudice for failure to submit a sufficient AOM. The Appellate Division affirmed. The Court granted certification. 255 N.J. 363 (2023).

**HELD:** The AOM plaintiff submitted complied with N.J.S.A. 2A:53A-27. First, an AOM does not need to specify that the affiant reviewed medical records. Second, a doctor to whom the affidavit attributed negligence is the agent of a named defendant and is identified in the AOM as one of the John or Jane Doe defendants included in the complaint. The Court stresses the importance of the Ferreira conference in professional negligence actions.

1. The dual purpose of the AOM statute is to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court. To achieve that balance, plaintiffs bringing negligence suits against designated professionals are required to produce an affidavit from an expert attesting to the merits of the claim. The Court has construed the statute to require dismissal with prejudice for noncompliance. (pp. 12-14)

2. In Cornblatt v. Barow, the Court analyzed the required contents of a compliant AOM and found that the AOM statute does not require that the affiant's qualifications must be included in the affidavit. 153 N.J. 218, 241 (1998). The Court declined to impose additional burdens on the plaintiff outside the statutory text. Id. at 242. In Fink v. Thompson, the Court found that an AOM referring to unknown defendants was insufficient with respect to a doctor who had been named in the complaint, but it concluded that the plaintiff had nevertheless substantially complied with the AOM statute because the doctor "was timely served with an affidavit and . . . report that clearly focused on his conduct and on the totality of the circumstances." 167 N.J. 551, 560-64 (2001). And the Appellate Division held that a plaintiff complied with N.J.S.A. 2A:53A-27 where the AOM identified the defendants only as "defendant architects and engineers." Medeiros v. O'Donnell & Naccarato, Inc., 347 N.J. Super. 536, 539, 544 (App. Div. 2002). (pp. 15-16)

3. The requirement of a Ferreira conference is meant to ensure that discovery related issues, such as compliance with the AOM statute, do not become sideshows to the primary purpose of the civil justice system -- to shepherd legitimate claims expeditiously to trial. The Court has stressed the need for a timely and effective Ferreira conference in all professional negligence actions. (pp. 16-19)

2

4.  Here, defendants' arguments focus on the Fallon AOM's (1) failure to mention that any medical records were reviewed and its (2) failure to name a specific named defendant whose actions fell below the applicable standard of care.  As to the first point, given that N.J.S.A. 2A:53A-27 does not refer to the review of medical records, affiants are not required to state that they reviewed the medical records of the injured party.  See Cornblatt, 153 N.J. at 241.  The Fallon AOM's failure to include a reference to Lowe's medical records thus does not render it insufficient.  As to the second point, the AOM statute "is silent as to any requirement that the affidavit specifically identify a defendant by name."  Medeiros, 347 N.J. Super. at 540.  And unlike the affidavit at issue in Fink, plaintiff's AOM specifically names Dr. Singh as "one of the John and Jane Doe [d]efendants sued therein."  Furthermore, Dr. Singh was not required to be named individually in the complaint because he was an agent of JSUMC and was one of the John and Jane Does referred to in the complaint.  (pp. 20-24)

5.  The Court reiterates the need for a timely and effective Ferreira conference in all professional negligence actions.  The conference is designed to identify and resolve issues regarding the AOM that has been served or is to be served.  Failing to hold such a conference in this case gave rise to issues that could have been resolved.  Because the Fallon AOM is compliant with N.J.S.A. 2A:53A-27's requirements, the Court need not reach the equitable remedies of substantial compliance or extraordinary circumstances.  The Court notes, however, that if it were to reach the question of extraordinary circumstances, the trial court's failure to hold a Ferreira conference would weigh heavily in favor of such a finding.  (pp. 24-25)

    **REVERSED and REMANDED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE SOLOMON's opinion. JUSTICE FASCIALE did not participate.**

3

Candace A. Moschella,
on behalf of herself and the
Estate of Alexandrianna Lowe,

Plaintiffs-Appellants,

v.

Hackensack Meridian Jersey Shore
University Medical Center and
Dr. Michael P. Carson,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| May 2, 2024 | July 11, 2024 |

Christina Vassiliou Harvey argued the cause for appellants (Lomurro Munson, attorneys; Christina Vassiliou Harvey, of counsel and on the supplemental briefs, and Andrew Broome, on the supplemental briefs; Appellants having filed briefs in support of certification on their own behalf).

Russell J. Malta argued the cause for respondents (Orlovsky Moody Schaaff Conlon Bedell McGann & Gabrysiak, attorneys; Russell J. Malta, of counsel and on the briefs).

Catherine J. Flynn argued the cause for amici curiae Medical Society of New Jersey and American Medical Association (Flynn Watts, attorneys; Michael A. Moroney, on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

Pursuant to N.J.S.A. 2A:53A-27, a plaintiff in an action against a licensed professional must "produce an affidavit from an expert attesting to the merits of the claim." Meehan v. Antonellis, 226 N.J. 216, 230 (2016). Issues regarding the expert affidavit -- the Affidavit of Merit (AOM) -- are to be resolved at an accelerated case management conference conducted by the trial court in accordance with Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 154-55 (2003), otherwise known as a Ferreira conference. In this appeal, we consider whether the trial court properly found, without holding a Ferreira conference, that the AOM submitted by plaintiff Candace Moschella was insufficient under N.J.S.A. 2A:53A-26 to -29.

Following the death of her daughter Alexandrianna Lowe, plaintiff filed a complaint seeking damages under New Jersey's Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, and for negligent infliction of emotional distress against Hackensack Meridian Jersey Shore University Medical Center (JSUMC), Michael Carson, M.D., and John and Jane Does 1 through 100. Plaintiff alleged that while Lowe was admitted at JSUMC, "numerous other

2

persons, whose identities are currently unknown . . . were also involved in the provision of medical care to" Lowe. As is required by N.J.S.A. 2A:53A-27, plaintiff submitted an AOM in support of the validity of her claim. Dr. Joseph Fallon prepared plaintiff's AOM.

The trial court, without holding a Ferreira conference, granted defendants' motion to dismiss plaintiff's complaint with prejudice, finding the Fallon AOM insufficient under N.J.S.A. 2A:53A-27. The court reasoned that the Fallon AOM did not state that Dr. Fallon reviewed any medical records, and it did not indicate that any named defendant committed negligence. The court further denied plaintiff's claims that she substantially complied with the AOM statute's requirements or that extraordinary circumstances warranted dismissal without prejudice. The Appellate Division affirmed.

We hold that the Fallon AOM complied with N.J.S.A. 2A:53A-27. First, an AOM does not need to specify that the affiant reviewed medical records. Second, a doctor to whom the affidavit attributed negligence is the agent of a named defendant and is identified in the AOM as one of the John or Jane Doe defendants included in the complaint. We therefore reverse the judgment of the Appellate Division and remand the matter for further proceedings. We stress once again the importance of the Ferreira conference in professional negligence actions.

3

## I.

## A.

Given that this case did not reach the discovery phase before it was dismissed with prejudice, we rely on the following facts alleged in plaintiff's complaint and responses to defendants' motions to dismiss.

On July 20, 2018, Lowe, who suffered from an opioid addiction, was admitted to JSUMC for complications associated with Type 1 diabetes. Plaintiff claims that defendants were aware of both conditions at the time of Lowe's admission to the hospital.

Shortly after plaintiff left Lowe at the hospital on the night of July 22, 2018, plaintiff received a call from medical staff that Lowe was unresponsive. Plaintiff later learned that staff found that "a syringe of unknown origin [had been] inserted into [Lowe's] IV line." Plaintiff alleged that defendants "negligently assumed" the syringe was related to Lowe's opioid addiction and believed that Lowe was overdosing. Hospital staff then administered Narcan, an anti-opioid overdose medication, but failed to check Lowe's blood sugar levels. An autopsy conducted by the Monmouth County Medical Examiner's Office revealed that Lowe had no illicit drugs in her system at the time of her death.

On July 21, 2020, plaintiff, acting pro se, filed a complaint on behalf of Lowe's estate,[1] alleging negligence under the Wrongful Death Act against defendants. At the time of the complaint's filing, plaintiff had not yet been appointed administratrix or administratrix ad prosequendum of Lowe's estate, so she did not have access to Lowe's medical records.

The complaint stated that Dr. Michael P. Carson

> was in charge of [Lowe's] medical care while she was an inpatient at [JSUMC] and numerous other persons, whose identities are currently unknown to Plaintiff (and therefore are herein referred as Defendants John and Jane Does Nos. 1 through 100 (the "Doe Defendants")), were also involved in the provision of medical care to [Lowe] while she was an inpatient at [JSUMC].

Defendants filed an answer on August 25, 2020, and later moved, without opposition, to dismiss Dr. Carson from the action because he did not participate in any of the events that led to Lowe's death. The motion included an affidavit identifying Dr. Vikas Singh as the attending physician at the time of Lowe's death and two pages of Lowe's medical records. The court granted defendants' motion, leaving JSUMC and the John and Jane Does as the remaining defendants.

---

[1] Plaintiff also alleged, on her own behalf, negligent infliction of emotional distress against all defendants.

B.

On September 28, 2020, the court informed plaintiff of a Ferreira conference scheduled for September 30, 2020, but that conference was postponed. The court rescheduled but ultimately cancelled the Ferreira conference.[2]

On October 28, 2020, defendants moved to dismiss plaintiff's complaint for failure to state a cause of action because she had not proffered an AOM. Three days later, plaintiff filed an AOM authored by retired nurse Jennifer Colangelo.

Plaintiff filed opposition to defendants' motion on November 24, 2020, and in support submitted a letter from Dr. Tirissa Reid, a board-certified endocrinologist, and a letter from Rachel Leininger, R.N., which pointed out the importance of checking the blood sugar levels of an unresponsive diabetic patient.

The court held oral argument on defendants' motion to dismiss on December 18, 2020, and concluded that although plaintiff failed to file an

---

[2] According to the court, the Ferriera conference never took place because "there was no [AOM]" and a Ferreira conference "is not designed to say . . . you need to file an [AOM]." In a later hearing, the trial court noted that instead of a Ferreira conference, plaintiff "had a conversation with someone who works in [the] civil assignment office . . . and w[as] made aware . . . that an [AOM] was needed."

6

AOM within sixty days of defendants' answer, a sixty-day extension had been granted and plaintiff had until December 23, 2020 to file an AOM.

On December 23, 2020, plaintiff submitted Dr. Fallon's curriculum vitae and AOM stating that he is "a licensed physician in the State of New Jersey" and at "the time of the conduct complained of" was "Board Certified in Internal Medicine, as was . . . Dr. Michael P. Carson and at least one of the John and Jane Doe [d]efendants sued therein (now known to be Dr. Vikas Singh, the physician in charge of the efforts to resuscitate [Lowe])." As part of the AOM, Dr. Fallon also provided that he

> reviewed the [c]omplaint and, based upon [his] education, training, experience and knowledge of the facts as alleged therein, [found] that the allegations therein allege a viable cause of action in that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited by one or more of the [d]efendants therein (including Dr. Singh, one of the John and Jane Doe [d]efendants sued therein) in the treatment, practice or work that is the subject of the [c]omplaint fell outside acceptable professional or occupational standards or treatment practices.

In response, defendants argued that the Fallon AOM was insufficient under N.J.S.A. 2A:53A-27 and plaintiff's complaint should therefore be dismissed with prejudice. Specifically, defendants claimed that the AOM failed to name the surviving defendants in the action, that the AOM did not state that Dr. Fallon was a "similarly licensed physician" as contemplated by

7

the AOM statute, and that Dr. Fallon failed to state that he reviewed Lowe's medical records.

Arguing extraordinary circumstances, plaintiff advised the trial court that her inability to be appointed administratrix ad prosequendum of her daughter's estate and the COVID-19 pandemic prevented her from securing Lowe's medical records. Notwithstanding, and without a Ferriera conference, on January 4, 2021, the trial court granted defendants' motion to dismiss plaintiff's complaint with prejudice for failure to submit a sufficient AOM.

In an accompanying written decision, the court reasoned that although Dr. Fallon is a "similarly credentialed expert" capable of submitting an AOM in this case, the Fallon AOM was insufficient because Dr. Fallon did not indicate that any named defendant's care fell outside acceptable professional or occupational standards. The court explained that "Dr. Fallon does not have the authority to cause [Dr. Singh] to be a named defendant through plaintiff's use of the 'John and Jane Doe' designations in the complaint." The court further found that Dr. Fallon's AOM violated the statute by failing to indicate that he reviewed any of Lowe's medical records.

Additionally, the court did not find that plaintiff substantially complied with the AOM statute because "an appropriate [AOM] by a medical professional likely cannot be issued without a review by the expert of Lowe's

8

medical records."[3]  Similarly, the court determined that plaintiff did not demonstrate extraordinary circumstances and subsequently dismissed her complaint with prejudice because she "received notice of the [AOM] requirement when she received the Ferreira conference notice and spoke with court staff."

Plaintiff was appointed administratrix ad prosequendum on February 12, 2021, nearly two months after the deadline for filing her AOM, and more than a month after the trial court dismissed her complaint.  Plaintiff moved for reconsideration of the dismissal of her complaint and later moved for leave to amend her complaint to add Dr. Singh as a named defendant.

After oral argument, the court denied plaintiff's motion to reconsider, finding that the AOM was insufficient and did not substantially comply with N.J.S.A. 2A:53A-27.  The court later issued an order denying plaintiff's motion to amend her complaint because "[a]n amendment of the complaint cannot be granted after the case [was] dismissed with prejudice[.]"

### C.

On appeal, plaintiff argued that the trial court erred as a matter of law in finding that the Fallon AOM was insufficient and, in the alternative, that the

---

[3]  Although the trial court listed the five prongs a plaintiff must establish for substantial compliance, the court did not analyze them.

trial court should have found that the AOM substantially complied with N.J.S.A. 2A:53A-27, or extraordinary circumstances warranted dismissal without prejudice.

The Appellate Division affirmed the trial court's decision, agreeing that the Fallon AOM was insufficient because it did not allege negligence against a named defendant. The Appellate Division found that plaintiff did not substantially comply with the AOM statute because she "was aware she required a compliant AOM to support her complaint" and was granted an extension to procure one, but failed to do so. Concluding that "plaintiff had ample opportunity to provide an AOM that complied with the statute," the court found that plaintiff failed to demonstrate extraordinary circumstances and dismissal with prejudice was appropriate.

D.

We granted plaintiff's petition for certification. 255 N.J. 363 (2023). We also granted leave to participate as amici curiae to the Medical Society of New Jersey (MSNJ) and the American Medical Association (AMA).

II.

Plaintiff contends that the Fallon AOM is sufficient because N.J.S.A. 2A:53A-27 does not require that the licensed professional named in the AOM be a named defendant. Plaintiff also argues that N.J.S.A. 2A:53A-27 does not

10

require the affiant to enumerate the materials reviewed or to provide their credentials.

Alternatively, plaintiff contends that she substantially complied with the requirements of N.J.S.A. 2A:53A-27 because defendants were not prejudiced, plaintiff attempted to obtain an AOM showing that at least one agent of JSUMC breached the standard of care, defendants had reasonable notice of her claims, and she submitted a detailed explanation justifying any failure to comply with the statute. Plaintiff also argues that if the AOM is insufficient and does not substantially comply with the AOM statute, extraordinary circumstances warrant dismissal of her complaint without prejudice because she was not appointed administratrix ad prosequendum of her daughter's estate until after the AOM deadline, the COVID-19 pandemic delayed her from procuring an AOM, and the court did not hold a Ferreira conference.

Defendants argue that the Fallon AOM does not meet the requirements of N.J.S.A. 2A:53A-27 because Dr. Fallon relied on plaintiff's complaint, rather than Lowe's medical records, and the AOM failed to identify a named defendant whose actions fell below the applicable standard of care. Defendants also contend therefore that the Fallon AOM does not substantially comply with N.J.S.A. 2A:53A-27 because no specific caregiver is alleged to have done anything that fell outside the relevant standard of care, and the

11

absence of a <u>Ferreira</u> conference does not relieve a plaintiff of the obligation to timely serve a conforming AOM. Defendants submit that plaintiff failed to demonstrate extraordinary circumstances, arguing that plaintiff's reliance on the lack of a <u>Ferreira</u> conference is "disingenuous" and that the dismissal of plaintiff's claims are unrelated to the COVID-19 pandemic.

Amici curiae MSNJ and AMA jointly agree with defendants that plaintiff's failure to obtain a sufficient or substantially compliant AOM and her failure to demonstrate exceptional circumstances warrant dismissal of her complaint with prejudice.

### III.

### A.

The Legislature enacted the AOM statute "as part of a tort reform package designed to 'strike[] a fair balance between preserving a person's right to sue and controlling nuisance suits.'" <u>Palanque v. Lambert-Woolley</u>, 168 N.J. 398, 404 (2001) (alteration in original) (quoting <u>Office of the Governor: News Release</u>, Gov. Christine Todd Whitman (June 29, 1995)). We have long recognized that the dual purpose of the AOM statute is "to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." <u>Ferreira</u>, 178 N.J. at 150 (quoting <u>Hubbard v. Reed</u>, 168 N.J. 387, 395 (2001)). To

12

achieve that balance, plaintiffs bringing negligence suits against designated professionals are required "to produce an affidavit from an expert attesting to the merits of the claim." Meehan, 226 N.J. at 230. Physicians and health care facilities are among the "licensed persons" covered by the AOM statute. N.J.S.A. 2A:53A-26(f), (j).

In an

> action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.
>
> In the case of an action for medical malpractice, the person executing the affidavit shall meet the requirements of a person who provides expert testimony or executes an affidavit as set forth in [N.J.S.A. 2A:53A-41]. . . . The person shall have no financial interest in the outcome of the case under review, but this prohibition shall not exclude the person from being an expert witness in the case.
>
> [N.J.S.A. 2A:53A-27 (emphases added).]

13

An AOM is not required "if the plaintiff provides a sworn statement in lieu of the affidavit setting forth that: the defendant has failed to provide plaintiff with medical records or other records or information having a substantial bearing on preparation of the affidavit." N.J.S.A. 2A:53A-28. "If the plaintiff fails to provide an affidavit or a statement in lieu thereof . . . it shall be deemed a failure to state a cause of action." N.J.S.A. 2A:53A-29. We have "construed the statute to require dismissal with prejudice for noncompliance." A.T. v. Cohen, 231 N.J. 337, 346 (2017).

"The [AOM statute] is the exclusive authority governing the document to be filed." Cornblatt v. Barow, 153 N.J. 218, 238 (1998). Because the statute's aim is "to identify and eliminate unmeritorious claims against licensed professionals and to permit meritorious claims to proceed efficiently through the litigation process," our courts recognize the doctrines of substantial compliance and extraordinary circumstances, which can "temper the draconian results of an inflexible application of the statute" when an AOM is insufficient. Meehan, 226 N.J. at 229 (quoting Ferreira, 178 N.J. at 151).

B.

1.

In several cases, our courts have considered the requirement to name allegedly negligent defendants in an AOM.

14

In 1998, we applied the AOM statute's provisions to a legal malpractice claim brought by a divorcee against her lawyer. Cornblatt, 153 N.J. at 236. We held in Cornblatt that, although N.J.S.A. 2A:53A-27 plainly requires the submission of an AOM, nothing in the statute's history "suggests the Legislature intended to foreclose the familiar doctrine of substantial compliance in the [AOM] context." Id. at 240. Analyzing the required contents of a compliant AOM, we found that although the statute separately "lists the affiant's qualifications as mandatory requirements, . . . the statute does not describe those requirements as information that must be included in the affidavit." Id. at 241 (emphasis added). We therefore declined to impose additional burdens on the plaintiff outside the statutory text. Id. at 242.

We further elaborated on the AOM's requirements in Fink v. Thompson, in which the plaintiff filed a complaint against the defendant doctor, two hospitals, and other unnamed physicians. 167 N.J. 551, 557 (2001). The plaintiff timely submitted an AOM against the defendant Dr. Strobel, but the AOM did not mention Dr. Strobel by name. Id. at 559. We held that the AOM's reference to "unknown" physicians did not satisfy N.J.S.A. 2A:53A-27 because Dr. Strobel was a named defendant and the AOM did not specifically refer to him. Id. at 560-61 ("N.J.S.A. 2A:53A-27 requires that a plaintiff provide an [AOM] to each defendant detailing a reasonable probability that at

15

least one claim concerning each defendant has merit."). We concluded, however, that the plaintiff had substantially complied with the AOM statute because "[Dr.] Strobel was timely served with an affidavit and . . . report that clearly focused on his conduct and on the totality of the circumstances attending [the hospital's] acceptance of [the patient] into its care under Strobel's authorization." Id. at 564. We therefore held that the plaintiff's complaint should not have been dismissed. Id. at 565.

One year after Fink, the Appellate Division held that a plaintiff complied with N.J.S.A. 2A:53A-27 where the AOM identified the defendants only by occupation as "defendant architects and engineers." Medeiros v. O'Donnell & Naccarato, Inc., 347 N.J. Super. 536, 539 (App. Div. 2002). The appellate court explained that although "the better practice would be for plaintiffs to identify, by name, the specific defendant alleged to have committed malpractice," the AOM identifying defendants by occupation was sufficient because there was only one "defendant engineer involved in the project." Id. at 542.

2.

Through case law, we have developed a requirement that the compliance of an AOM with the AOM statute be examined at a conference not long after the pleadings are filed.

16

To combat the "avalanche of litigation" generated by the AOM statute, we "declared in Ferreira that an accelerated case management conference should be conducted within ninety days of the filing of an answer to identify and address any and all issues concerning the [AOM] served or not served by the plaintiff." Meehan, 226 N.J. at 229 (emphasis added). Ferreira dealt with a case of attorney inadvertence: the plaintiff obtained an AOM ten days after receipt of an answer but filed it eighteen days out of time. 178 N.J. at 147. We held that when a plaintiff obtains an AOM within the 120-day period referred to in the statute and serves the AOM outside that timeframe but before the defendant files their motion to dismiss, the complaint will not be dismissed. Id. at 154.

The requirement of a Ferreira conference within ninety days of the filing of an answer is meant "[t]o ensure that discovery related issues, such as compliance with the [AOM] statute, do not become sideshows to the primary purpose of the civil justice system -- to shepherd legitimate claims expeditiously to trial." Ibid. We reasoned that

> [e]xpediting the schedule in malpractice cases will further the intent of our Best Practice rules: to resolve potential discovery problems before they become grist for dueling motions. At the conference, the court will address all discovery issues, including whether an [AOM] has been served on [the] defendant. If an [AOM] has been served, defendant will be required to

17

advise the court whether he has any objections to the adequacy of the [AOM]. If there is any deficiency in the [AOM], plaintiff will have to the end of the 120-day time period to conform the [AOM] to the statutory requirements. If no [AOM] has been served, the court will remind the parties of their obligations under the statute and case law.

[Id. at 154-55 (emphasis added).]

In 2016, "we return[ed] to the vexing and recurring issue" of the sufficiency of an AOM when a plaintiff sought treatment for sleep apnea from an orthodontist, who failed to inform the plaintiff that the treatment may dislocate his teeth. Meehan, 226 N.J. at 220. The plaintiff, who was self-represented, submitted an AOM from a dentist who specialized in prosthodontics and the treatment of sleep apnea. Ibid. The defendant asserted that because a dentist, not a "like qualified" orthodontist, authored the AOM, it did not meet the enhanced credential requirements for AOMs submitted in professional negligence cases under the Patients First Act (PFA), N.J.S.A. 2A:53A-41. Id. at 224. We first held that the PFA's constraints applied only to physicians in medical malpractice actions, which was not the case in Meehan. Id. at 235. Finding that the dentist affiant was not bound by the PFA, we held that the AOM statute "requires no more than that the person submitting an [AOM] be licensed in this state or another and 'have particular

18

expertise in the general area or specialty involved in the action.'" Id. at 237 (quoting N.J.S.A. 2A:53A-27).

Importantly, we reasoned that "[a]n effective Ferreira conference would probably have prevented [the] appeal" because "[t]he trial court pointedly declined to resolve the issues presented by [the] plaintiff." Id. at 240. We reiterated "the need for a timely and effective Ferreira conference in all professional negligence actions" because "[t]he conference is designed to identify and resolve issues regarding the [AOM] that has been served or is to be served." Id. at 241.

IV.

Informed by those principles, we turn to the question presented by this appeal: whether plaintiff's complaint should have been dismissed with prejudice for failure to comply with N.J.S.A. 2A:53A-27 when the AOM identified an agent of defendant JSUMC who was not himself a named defendant and did not state that medical records were reviewed.

A.

Because this appeal involves a matter of statutory interpretation, our review is de novo. Cashin v. Bello, 223 N.J. 328, 335 (2015). When interpreting the AOM statute, as with any statute, "[t]he objective of that task 'is to discern and effectuate the intent of the Legislature.'" Meehan, 226 N.J.

19

at 232 (quoting Shelton v. Restaurant.com, Inc., 214 N.J. 419, 428-29 (2013)). "In most instances, the best indicator of that intent is the plain language chosen by the Legislature." Cashin, 223 N.J. at 335 (quoting State v. Gandhi, 201 N.J. 161, 176 (2010)). We reiterate here that the text of the AOM statute "is the exclusive authority governing the document to be filed," and "[t]he issue of what information must be included in the [AOM] is one of statutory construction." Cornblatt, 153 N.J. at 218, 241.

### B.

Here, defendants do not contest either that Dr. Fallon had access to the two pages of medical records attached to defendants' answer or that Dr. Fallon is a similarly qualified licensed person under the AOM statute and the PFA.[4] Defendants' arguments focus on the Fallon AOM's (1) failure to mention that any medical records were reviewed and its (2) failure to name a specific named defendant whose actions fell below the applicable standard of care. We consider each argument in turn.

---

[4] Because this is a medical malpractice action against a physician, the PFA and its attendant requirements are implicated. Under N.J.S.A. 2A:53A-41(a), a physician submitting an AOM must be a licensed physician with the same specialty as the allegedly negligent doctor.

20

1.

As we held in <u>Cornblatt</u>, the "the only part of the statute detailing what must be included in the [AOM]" is the specification "'that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.'" 153 N.J. at 241 (quoting N.J.S.A. 2A:53A-27). Given that the AOM statute does not make any reference to the review of medical records, we conclude that affiants are not required to state that they reviewed the medical records of the injured party.

Further, although N.J.S.A. 2A:53A-28 provides relief where a defendant refuses to provide medical records, creating an inference that medical records must be reviewed before submitting an AOM, that inference does not import a requirement that affiants state <u>in the AOM</u> that they reviewed the patient's medical records. We thus find that the Fallon AOM's failure to include a reference to Lowe's medical records does not render it insufficient.

2.

We turn next to the findings of the trial court and the Appellate Division that the Fallon AOM was insufficient for failing to allege negligence against a named defendant. Plaintiff here alleged negligence against JSUMC -- a named

21

defendant -- by and through its agents, the John and Jane Doe defendants 1 through 100, on a theory of vicarious liability.

To establish vicarious liability, a plaintiff must demonstrate an employment relationship and that the alleged tort occurred in the scope of that employment. Carter v. Reynolds, 175 N.J. 402, 408-09 (2003). "Although as a general rule of tort law, liability must be based on personal fault," an employer will be held vicariously liable under the doctrine of respondeat superior "for the negligence of an employee causing injuries to third parties, if, at the time of the occurrence, the employee was acting within the scope of his or her employment." Ibid.

Once JSUMC provided plaintiff with the two pages of medical records, Dr. Fallon was able to identify Dr. Singh as "one of the John and Jane Doe [d]efendants sued therein." We assume for the purposes of resolving the issue raised in this appeal, because it is uncontested that Dr. Singh was JSUMC's agent, that any alleged negligence occurred within the scope of that agency relationship.

As the Appellate Division correctly stated in Medeiros, the AOM statute "is silent as to any requirement that the affidavit specifically identify a defendant by name." 347 N.J. Super. at 540. "[W]hen a statute is susceptible of an interpretation true to its purpose and that permits plaintiffs to proceed

22

with meritorious claims, we will not add requirements not explicitly set forth that deny plaintiffs their day in court." Burns v. Belafsky, 166 N.J. 466, 470 (2001).

At the time of plaintiff's complaint, plaintiff did not have access to Lowe's medical records. Plaintiff therefore raised this claim against JSUMC and "other persons, whose identities are currently unknown (and therefore are herein referred as [d]efendants John and Jane Does Nos. 1 through 100[)]." The Fallon AOM sufficiently identifies Dr. Singh as "one of the John and Jane Doe [d]efendants sued therein."

In Fink, we found that the AOM was insufficient because it referenced "unknown" physicians. 167 N.J. at 560-61. By contrast, plaintiff's AOM specifically names Dr. Singh as "one of the John and Jane Doe [d]efendants sued therein." In accordance with Medeiros, the Fallon AOM named "the specific defendant alleged to have committed malpractice." 347 N.J. Super. at 542.

Furthermore, to the extent that Dr. Singh is not a named defendant in the complaint, we hold that he was not required to be named individually in the complaint because he was an agent of JSUMC and was one of the John and Jane Does referred to in the complaint. Again, plaintiff was unable to obtain Lowe's medical records, which made it impossible to accurately identify the

physicians or nurses who attended to her daughter on the night she died. However, upon receipt of defendants' answer, accompanied by two pages of records that explained Dr. Singh's role, plaintiff successfully identified Dr. Singh as both an agent of JSUMC and "one of the John and Jane Doe [d]efendants sued therein." It would therefore be inconsistent with our precedent and the purpose of the statute to uphold a ruling denying this plaintiff the ability to proceed with this medical malpractice claim.

We reiterate here, as we did in Meehan, "the need for a timely and effective Ferreira conference in all professional negligence actions" because "[t]he conference is designed to identify and resolve issues regarding the [AOM] that has been served or is to be served." 226 N.J. at 241. Failing to hold such a conference in this case gave rise to issues that could have been resolved. For example, the fact that her late appointment as administratrix ad prosequendum deprived plaintiff of the legal authority to request Lowe's medical records from JSUMC would have explained any delay. Additionally, it would have been made clear that Dr. Fallon benefited from Lowe's medical records identifying Dr. Singh.

Because we find the Fallon AOM is compliant with N.J.S.A. 2A:53A-27's requirements, we need not reach the equitable remedies of substantial compliance or extraordinary circumstances. If we were to reach the question

24

of extraordinary circumstances, however, the trial court's failure to hold a Ferreira conference would weigh heavily in favor of such a finding. See A.T., 231 N.J. at 346 ("The Ferreira conference was designed to be the Judiciary's key tool to promote satisfaction of the [AOM statute's] salutary policy goals."). We emphasize once again the conference's importance in professional negligence actions.

V.

We hold that the Fallon AOM is sufficient, and plaintiff's complaint should not have been dismissed. We therefore vacate the dismissal of plaintiff's complaint, reinstate the complaint, and remand for the trial court to consider plaintiff's motion to amend her complaint to add Dr. Singh as a defendant. See Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006) ("We have made clear that 'Rule 4:9-1 requires that motions for leave to amend be granted liberally' . . . ." (quoting Kernan v. One Wash. Park Urb. Renewal Assocs., 154 N.J. 437, 456-57 (1998))).


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE SOLOMON's opinion. JUSTICE FASCIALE did not participate.

25